IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEVON WATTS KIRK, | : | |
| Petitioner, | : | 1:15cv-1530 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| DAVID J. EBBERT, | : | |
| Respondent. | : | |

**<u>MEMORANDUM</u>**

**May 25, 2016**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Levon Watts Kirk ("Petitioner" or "Kirk"), an inmate incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania. He contends that his due process rights were violated during the course of a prison disciplinary proceeding. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.      BACKGROUND**

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent

intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3.

On December 19, 2014, Kirk received incident report 2663200 charging him with Code 203 – Threatening. (Doc. 7-2, p. 9). The report contained the following description of the incident:

> On December 19th while conducting the 10:00 pm restraint check. Cell G-102, occupied by inmate Kirk #12171-042. Inmate Kirk was agitated and stated "what the f*** don't you understand I ain't eating or doing anything else so get the f*** out of my cell." The inmate was then asked what his issue was and inmate Kirk then stated "Don't make me kick you in the f***ing balls, if you all Lt's, Co's have any. I'm sick of you crackers bothering me, get out."

(*Id.*). He made no comments during the UDC review. (*Id.* at 10). The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") because sanctions

unavailable to the UDC were recommended. (*Id.*) Kirk refused to sign both the Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing. (*Id.* at 13, 14).

At the DHO hearing held on January 7, 2015, Kirk requested a staff representative. (*Id.* at 17). Lieutenant Saylor appeared and indicated that Kirk made no special request of him, that he had no first-hand knowledge of the incident and that he had no statement to make or information to present. (*Id.*) Kirk requested no witnesses and did not present any documentary evidence and made no complaints of procedural error. (*Id.*) He denied the charge and testified as follows: "I was telling staff I wanted to get out of restraints. I burned my elbow on the heat pipe to get their attention. Staff came down later with this incident report. I never threatened anybody." (*Id.*)

In finding that Kirk committed the prohibited act, Code 203, Threatening another with Bodily Harm, the DHO considered the incident report, which contained the eyewitness testimony of the reporting officer, Kirk's admission that he burned his elbow on a pipe, which indicated that he was agitated, and his extensive disciplinary history for threatening others with bodily harm. (*Id.* at 18).

Based on the incident report and Kirk's defense, the DHO found as follows:

> You denied the charge, and presented as your defense that you were telling staff that you wished to be removed from ambulatory restraints, that you burned you elbow on the heat pipe in your cell to get the attention of staff, that staff issued you this incident report, and

>that you did not make the verbal threat. The DHO gave greater weight to the reporting officer's written statement that you threatened to kick staff, than to your claim you did not make the verbal threat to staff. This is based on the fact the reporting officer was very specific concerning your continued misconduct in section 11 of the incident report; information in section 11 of the incident report demonstrates you communicated your intent to inflict physical harm on a staff member; staff were conducting a check on your welfare because you were in ambulatory restraints for making a previous verbal threat to harm staff; you were agitated at the time of the incident; you made a very specific threat to "kick (staff0 in the f\*\*\*ing balls", and; your misconduct substantiated your continuance in ambulatory restraints.
>
>The DHO concedes you were telling staff you wished to be removed from ambulatory restraints, but the greater weight of the evidence supports you also threatened staff at this time. Your admission you burned your elbow on the heat pipe in your cell lends credibility you were agitated, and that you continued to escalate your misconduct to where you threatened harm to staff. The DHO discussed with you that staff issued you this incident report because you did make the verbal threat attributed to you in section 11 of the incident report.

(*Id.*).

In sanctioning him with a disallowance of twenty-seven days of good conduct time, thirty days disciplinary segregation, and ninety days loss of telephone, visiting, and commissary privileges, the DHO reasoned as follows:

>Threatening others with bodily harm in a correctional institution inherently jeopardizes security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong Kirk's period of incarceration. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in

misconduct will result in the loss of pleasurable privileges while incarcerated.

(*Id.*)

After exhausting all available administrative avenues of review, Kirk filed the instant petition. (Doc. 1, pp. 2, 3).

## II. DISCUSSION

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Because federal inmates possess a liberty interest in good conduct time, *see Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991), the loss of such time in the context of prison discipline proceedings is subject to judicial review. Review, however, is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Superintendent v. Hill*, 472 U.S. 445, 45 457. (1985).

The sanction of a loss of good conduct time requires that the inmate receive the following due process protections: 1) written notice of the claimed violation at least twenty-four hours in advance of a hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in

5

presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564-72. Based on the background information extracted from the record, it is clear that the *Wolff* due process requirements were satisfied in the matter *sub judice*.

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision. *Hill*, 472 U.S. at 455; *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

In challenging the sufficiency of the evidence, Kirk contends that he is actually innocent of the charge and that the report was written to keep him in restraints. (Doc. 1, pp. 6-7). He also asserts that an ambulatory restraint check

6

conducted at the same time as the incident report contradicts the DHO's findings. (Doc. 1, at 7; Doc. 3, pp. 5, 6). Finally, he takes issue with the manner in which his appeal of the DHO's decision was handled. (Doc. 1, p. 7).

With respect to the ambulatory restraint report, this was not presented to the DHO during the hearing and, as such, is not part of the record. *Hill* constrains the scope of review to evidence in the record before the DHO. Likewise, the procedural irregularities complained of during his appeal of the DHO decision have no bearing on our analysis as they concern conduct that took place outside the context of the DHO hearing. These arguments are wholly without merit.

According to the record, in arriving at a finding of guilt, the DHO specifically relied on the incident report, which contained the eyewitness testimony of the reporting officer, Kirk's admission that he burned his elbow on a pipe, which indicated that he was agitated, and his extensive disciplinary history for threatening others with bodily harm. It is clear that the finding of guilt has some

evidentiary support in the record before the DHO.[1] Consequently, the petition will be denied.

## III. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

---

[1] The DHO references "the greater weight of the evidence" standard in discussing Kirk's position that he was attempting to be removed from ambulatory restraints. (Doc. 7-2, p. 18). This standard of review is applicable in the presence of conflicting evidence. *See* 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence). There is no indication that this evidence conflicts with the information contained in the incident report. However, out of an abundance of caution, the Court concludes that, even if there existed conflicting evidence, the DHO's decision is supported by the great weight of the evidence.